Timothy A. PACHOWITZ, as Special Administrator of the Estate of Julie Lynn Pachowitz, Plaintiff-Respondent,

v.

Katherina R. LEDOUX, Tess Corners Volunteer Fire Department and Continental Western Insurance Company, Defendants-Appellants,†

ABC INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 02–2100. Submitted on briefs April 9, 2003.—Decided May 28, 2003.*

2003 WI App 120

(Also reported in 666 N.W.2d 88.)

† Petition to review denied 10-21-03.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Emile H. Banks, Jr.* and *Vicki L. Arrowood*, of *Emile Banks & Associates, LLC.* of Milwaukee, and *Thomas A. Ogorchock* of *Miller & Ogorchock* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Murn* and *Michelle E. Martin*, of *Murn and Martin, S.C.* of Waukesha.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. Nettesheim, P.J. While employed by the Tess Corners Volunteer Fire Department as an emergency medical technician (EMT), Katherina R. LeDoux provided emergency medical attention to Julie Lynn Pachowitz. In this action, Pachowitz alleged that LeDoux invaded her privacy pursuant to WIS. STAT. § 895.50 (2001–02),[1] by disclosing to a third party the

---

[1] All statutory references are to the 2001–02 version.

reason that Pachowitz required medical attention.[2] A jury found in favor of Pachowitz and awarded her $3000 in compensatory damages. Pursuant to the fee shifting provisions of the statute, the trial court awarded Pachowitz $30,460 in attorney fees.

¶ 2. LeDoux and Tess Corners Volunteer Fire Department, together with their insurer, Continental Western Insurance Company, appeal from the judgment. They argue that the trial court erred in (1) denying their postverdict motion to change the jury's finding that LeDoux had invaded Pachowitz's privacy; (2) setting Pachowitz's reasonable attorney fees at $30,460; (3) holding LeDoux's offer of judgment defective, and (4) holding Pachowitz's offer of settlement valid and therefore awarding Pachowitz double costs and interest pursuant to WIS. STAT. § 807.01(3) and (4).

¶ 3. We uphold the trial court's rulings denying the appellants' motion to change the jury's answer and setting Pachowitz's reasonable attorney fees at $30,460. We also affirm the trial court's rejection of LeDoux's offer of judgment. However, we reverse the trial court's ruling that Pachowitz's offer of settlement was valid. We hold that Pachowitz's offer of settlement was defective because it was a single offer made to multiple defendants whose interests were then adverse. We remand for the entry of judgment in conformity with this opinion.

### FACTS AND PROCEDURAL HISTORY

¶ 4. LeDoux was a volunteer EMT for the Tess Corners Volunteer Fire Department. On April 21, 2000,

---

[2] Julie Lynn Pachowitz died during the pendency of these proceedings. As a result, her estate was substituted as the plaintiff and is the respondent in this appeal. For ease of reference, we will refer to the respondent as "Pachowitz."

she and three other members of the department responded to an emergency 911 call at the Pachowitz residence regarding an overdose or possible overdose.

¶ 5. Upon arriving at the Pachowitz residence, the medical team discovered Julie Pachowitz unresponsive and with poor vital signs. At her husband's request, Pachowitz was transported to Waukesha Memorial Hospital. After completing the EMT response, LeDoux returned home and later spoke to a friend, Sally Slocomb, to discuss the fact that she had assisted in transporting Pachowitz to the hospital emergency room for a possible overdose.[3]

¶ 6. Prior to the emergency EMT response, LeDoux had never met Pachowitz. However, about two weeks prior to the incident, LeDoux was socializing with a group of people including Slocomb, when Slocomb and another woman spoke about Pachowitz and her medical condition. During this conversation, LeDoux learned that Slocomb worked with Pachowitz at West Allis Memorial Hospital. LeDoux also gained the impression that Slocomb and Pachowitz were very close friends.

¶ 7. LeDoux testified that she placed the telephone call to Slocomb after the EMT emergency response because she was concerned about Pachowitz and thought Slocomb could possibly be of assistance to Pachowitz. Following LeDoux's telephone call, Slocomb drove to West Allis Memorial Hospital where she revealed the EMT response to the Pachowitz home and discussed Pachowitz's situation with other staff.

---

[3] LeDoux also spoke to her husband and another EMT about the matter. However, these communications were not the basis for Pachowitz's invasion of privacy claim.

¶ 8. On December 8, 2000, Pachowitz filed this action against the appellants alleging that LeDoux had defamed her and violated her privacy by publicizing information concerning her medical condition and making untrue statements indicating that she had attempted suicide.[4] Pachowitz alleged that she had been and was continuing to undergo medical care due to bodily illness and that she had suffered a "reaction to medication" on April 21, 2000, when she was taken to Waukesha Memorial Hospital by LeDoux's EMT unit.

¶ 9. Tess Corners and Continental answered, raising an affirmative defense that LeDoux's communication to Slocomb was not made within the scope of her employment with Tess Corners. As a result of its position adverse to LeDoux's interests, Continental retained separate counsel for LeDoux. LeDoux's counsel then filed a separate answer on LeDoux's behalf and continued to represent LeDoux throughout all of the trial court proceedings.

¶ 10. Following her answer, LeDoux filed a motion to dismiss Pachowitz's action, contending that her statements to Slocomb did not satisfy the "publicity" element of an invasion of privacy claim under Wis. Stat. § 895.50(2)(c). LeDoux also argued that she had not acted recklessly or unreasonably in contacting Slocomb regarding Pachowitz's care.[5] Because the parties referred to matters outside the pleadings, the trial court

---

[4] Pachowitz additionally named LeDoux's homeowner's insurance provider, American Family Mutual Insurance Company, as a defendant. Pachowitz later stipulated to the dismissal of American Family from the action.

[5] LeDoux additionally argued that the matter was governed by Wis. Stat. § 153.85, which provides that any person who discloses an individual's health care information is liable to the patient for actual damages and costs, plus exemplary damages

639

treated the motion as one for summary judgment. *See* Wis. Stat. § 802.06(3). The court rejected LeDoux's argument that her dissemination of information to only one person, Slocomb, did not satisfy the "publicity" element of an invasion of privacy claim as a matter of law. Instead the court held that whether the "publicity" element was satisfied required a full exploration at trial regarding the particular circumstances of the case and Slocomb's "character." The court similarly held that the reasonableness or recklessness of LeDoux's actions was an issue of fact for the jury.[6]

¶ 11. Prior to the summary judgment proceedings, LeDoux had made a timely offer of judgment pursuant to Wis. Stat. § 807.01(1), offering to "settle all of the plaintiff's claims with regard to the above matter for a total of Five Thousand Dollars . . . together with statutory taxable costs and disbursements." Pachowitz did not accept LeDoux's offer. Instead, she later countered with her own offer of settlement pursuant to § 807.01(3), offering "to settle this matter with the Defendants, Katherina LeDoux, Tess Corners Volunteer Fire Department, and Continental Western Insurance Company, for the sum of Twenty Five Thousand Dollars . . . which includes statutory attorneys' fees as allowed by Wis. Stats. 895.50, together with taxable costs." The appellants did not accept Pachowitz's offer.

¶ 12. The matter proceeded to a jury trial. At the close of the evidence, Continental advised the trial

of up to $1000 for a negligent violation and up to $5000 for an intentional violation. LeDoux does not raise this argument on appeal.

[6] Following the entry of the trial court's written order denying LeDoux's motion to dismiss, LeDoux filed a petition for leave to appeal the nonfinal order. We denied LeDoux's motion by written order dated January 9, 2002.

court that it was abandoning its affirmative defense that it did not owe coverage to LeDoux. As a result, the special verdict did not include any coverage questions. Instead, the verdict was limited to Pachowitz's invasion of privacy claim. The jury returned a verdict answering "yes" to the following question: "Did Katherina LeDoux violate Julie Pachowitz's right of privacy by publicizing a matter concerning her private life, namely that she had been taken from her home to the hospital by emergency personnel because of a possible drug overdose?" The jury also awarded Pachowitz $3000 in compensatory damages.

¶ 13. On May 29, 2002, the appellants filed motions after verdict requesting that the jury's answer be changed from "yes" to "no." In support, the appellants renewed LeDoux's pretrial arguments that LeDoux's communication to Slocomb did not constitute "publicity" and that LeDoux's conduct was not reckless or unreasonable. The appellants additionally sought costs pursuant to WIS. STAT. § 807.01(1) based on their contention that the jury's damage award of $3000 was less favorable than LeDoux's $5000 offer of judgment.

¶ 14. Pachowitz countered with her own motion for judgment on the verdict and for her reasonable attorney fees in the amount of $30,460 under the fee shifting provisions of WIS. STAT. § 895.50(1)(c). In addition, Pachowitz sought double costs pursuant to WIS. STAT. § 807.01(3) and 12% interest on the judgment pursuant to § 807.01(4) based on her contention that the judgment, including her reasonable attorney fees, exceeded her $25,000 offer of settlement.

¶ 15. The trial court denied the appellants' motion to change the jury's answer, finding that the evidence supported the verdict. The court also found that the Pachowitz's requested attorney fees in the

amount of $30,460 was reasonable and the court awarded those fees under the fee shifting provisions of WIS. STAT. § 895.50(1)(c). The court further held that LeDoux's offer of judgment was invalid because it did not include an allowance for Pachowitz's attorney fees. When measuring LeDoux's offer of judgment and Pachowitz's offer of settlement against the judgment, the trial court included Pachowitz's reasonable attorney fees in the judgment. Since Pachowitz's total recovery exceeded the offer of settlement, the court awarded Pachowitz double costs pursuant to WIS. STAT. § 807.01(3) and 12% interest pursuant to WIS. STAT. § 807.01(4). The court entered a final judgment in favor of Pachowitz in the amount of $37,909.86. LeDoux, Tess Corners and Continental appeal.

## DISCUSSION

### Invasion of Privacy

#### 1. Publicity

¶ 16. The appellants first argue that WIS. STAT. § 895.50 does not apply in this case because LeDoux's statement to one person, Slocomb, was not sufficient as a matter of law to constitute the necessary element of "publicity." Pachowitz responds that whether LeDoux's actions were sufficient to constitute "publicity" was a question for the jury.

¶ 17. Invasion of privacy actions are governed by WIS. STAT. § 895.50, which provides in relevant part:

> (1) The right of privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief:

> . . . .

(b) Compensatory damages based either on plaintiff's loss or defendant's unjust enrichment; and

(c) A reasonable amount for attorney fees.

**(2)** In this section, "invasion of privacy" means any of the following:

. . . .

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

¶ 18. In order to establish a cause of action for invasion of privacy under WIS. STAT. § 895.50(2)(c), a plaintiff must prove: (1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed. *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 929–30, 440 N.W.2d 548 (1989). "Publicity," for purposes of § 895.50, has been defined to mean that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Hillman v. Columbia County*, 164 Wis. 2d 376, 394, 474

N.W.2d 913 (Ct. App. 1991) (citing RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a (1977)).

¶ 19. The appellants rely on *Zinda* and *Hillman* in support of their argument that the disclosure of private information must be to more than one person in order to satisfy the "publicity" element of WIS. STAT. § 895.50(2)(c). In both *Zinda* and *Hillman*, the disclosure was made to numerous individuals. In *Zinda*, the court found that a plaintiff could establish a prima facie claim for invasion of privacy when the plaintiff's employer included in the company newsletter a statement that the plaintiff had been terminated from the company for falsification of his employment form. *Zinda*, 149 Wis. 2d at 918–19, 930. The company distributed 160 copies to its employees, which the court found to be a "substantial audience." *Id.* at 919, 930. In *Hillman*, the plaintiff, a former inmate, made an invasion of privacy claim against Columbia County and jail employees based on the dissemination of his medical history by jail employees to prison inmates and other jail employees. *Hillman*, 164 Wis. 2d at 384. Although the County argued that an audience of jail employees and inmates was "too limited" to satisfy the publicity element, the court found that oral communication among numerous jail employees and inmates is sufficient to constitute publicity under § 895.50(2)(c). *Hillman*, 164 Wis. 2d at 394–95.

¶ 20. The appellants distinguish the facts of this case from *Zinda* and *Hillman* by pointing out that LeDoux advised but one person, Slocomb, about the EMT call and that it was Slocomb, not LeDoux, who further publicized the information to the staff at West Allis Memorial Hospital. Based on LeDoux's disclosure to only one person, as opposed to the published statement in *Zinda* or the dissemination of private informa-

644

tion to numerous people in *Hillman*, the appellants contend that LeDoux did not communicate Pachowitz's private information to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *See Hillman*, 164 Wis. 2d at 394.

¶ 21.　While LeDoux's disclosure did not rise to the level of those in *Zinda* or *Hillman*, we reject the appellants' assertion that a disclosure of private information to one person can never constitute "publicity." We do not read *Zinda* or *Hillman* to stand for the proposition that a single communication to a single person cannot ever, as a matter of law, constitute publicity. Nor are we persuaded that the use of the term "persons" as opposed to "person" in the jury instruction for invasion of privacy requires a disclosure to more than one person. *See* Wis JI—Civil 2550 (providing the plaintiff must establish that "facts were communicated [to] . . . a sufficient number of persons to insure that the facts become a matter of public knowledge").[7] Instead, we agree with the trial court that the character and nature of the one person to whom the offending information was communicated, here Slocomb, was a matter that had to be probed at a full trial. As the trial court aptly stated, there was a genuine issue of material fact as to "the type and character of Sally Slocomb" because there was no evidence as to whether Slocomb was "the biggest gossip in Muskego and West Allis Hospital" or whether "she had the stiffest upper lip of anyone in the state."

---

[7] While the work of the civil jury instructions committee is insightful and persuasive, the instructions issued by the committee are not binding. *Nommensen v. Am. Cont'l Ins. Co.* 2001 WI 112, ¶ 47, 246 Wis. 2d 132, 629 N.W.2d 301.

¶ 22. The appellants contend that the trial court erred in considering anything but the number of people told. In support, they point to the many courts that have held that "publicity" requires disclosure to more than one or just a few individuals.[8] However, other courts have looked to the particular facts of the case together with the nature of the disclosure and the relationships of the individuals involved in assessing whether the publicity element of an invasion of privacy claim was satisfied. This is so even when the disclosure

---

[8] *See Hanson v. Hancock County Mem'l Hosp.*, 938 F. Supp. 1419, 1437–38 (N.D. Iowa 1996) (communication to a small group does not constitute "publicity"); *Yoder v. Smith*, 112 N.W.2d 862, 864 (Iowa 1962) (publicity does not include communication to the plaintiff's employer, or to any other individual or small group); *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 570 (N.D. Ohio 1997) (one person or three people do not constitute "public at large"), *aff'd,* 172 F.3d 51 (6th Cir. 1998) (per curiam) (it is not an invasion of privacy to disclose an embarrassing fact to a single person or even a small group of persons); *Robins v. Conseco Fin. Loan Co.*, 656 N.W.2d 241, 242 (Minn. Ct. App. 2003) (disclosure to one person does not constitute publicity); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1082–84 (D. Minn. 1999) (disclosure to three people is not sufficient publicity to warrant a claim for invasion of privacy); *Wood v. Nat'l Computer Sys., Inc.*, 814 F.2d 544, 545 (8th Cir. 1987) (disclosure of private information to one person is not sufficient to constitute publicity); *Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1521 (D. Utah 1997) (disclosure of private facts to plaintiff's employer and family members does not constitute publicity); *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1448 (D. Nev. 1994) (creditor's phone calls to a small group of a debtor's coworkers not sufficient to constitute publicity); *Taylor v. NationsBank N.A.*, 738 A.2d 893, 897 (Md. App. 1999) ("[N]o matter how offensive the intrusion, the communication must be to a group larger than just a few persons.").

is made, as in this case, to only one or a few persons. For example, in Illinois, if a plaintiff has a special relationship with the individuals to whom the matter was disclosed, the publicity requirement may be satisfied by disclosure to a small number of people. *Chisholm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 940 (N.D. Ill. 1998).[9] The rationale behind this rule is that the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people. *Id.*

■■■

¶ 23. Although Wisconsin courts have never expressly applied this exception to the general publicity rule, the *Hillman* court recognized it when the court observed that "there is authority for finding 'publicity' [when disclosure is to a limited audience] where a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed." *Hillman*, 164 Wis. 2d at 395 n.10 (citing *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 903 (Ill. App. 1990);

---

[9] *See also Hill v. MCI WorldCom Communications, Inc.*, 141 F. Supp. 2d 1205, 1213 (S.D. Iowa 2001) (communication to one person constituted publicity due to confidential relationship between plaintiff and third party); *McSurely v. McClellan*, 753 F.2d 88, 112 (D.C. Cir. 1985) (applying Kentucky law, "the publication requirement also may be satisfied by proof of disclosure to a very limited number of people when a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed"); *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 903 (Ill. App. 1990) (disclosure to a small group of fellow employees sufficient because special relationship existed); *Beaumont v. Brown*, 257 N.W.2d 522, 531 (Mich. 1977) (the "public" might be a particular public such as fellow employees, club members, church members family, or neighbors), *overruled on other grounds by Bradley v. Saranac Cmty. Sch. Bd. of Educ.*, 565 N.W.2d 650 (Mich. 1997).

*McSurely v. McClellan*, 753 F.2d 88, 112 (D.C. Cir. 1985); *Beaumont v. Brown*, 257 N.W.2d 522, 531 (Mich. 1977)). When a special relationship exists, the public can include one person or small groups such as fellow employees, club members, church members, family or neighbors. *Beaumont*, 257 N.W.2d at 529, 531. "An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff." *Id.* at 531.

¶ 24. We conclude that disclosure of private information to one person or to a small group does not, as a matter of law in all cases, fail to satisfy the publicity element of an invasion of privacy claim. Rather, whether such a disclosure satisfies the publicity element of an invasion of privacy claim depends upon the particular facts of the case and the nature of plaintiff's relationship to the audience who received the information.

¶ 25. Here, the facts established that LeDoux disclosed Pachowitz's private information to Slocomb, who LeDoux knew was one of Pachowitz's fellow employees at West Allis Memorial Hospital. Pachowitz's husband's request to the EMTs that Pachowitz be transported to a different hospital, Waukesha Memorial Hospital, supports an inference that Pachowitz wanted to avoid disclosure of her need for emergency medical care to her fellow employees. Approximately two weeks prior to the April 21 incident, while socializing with Slocomb and other individuals, LeDoux heard Slocomb discuss Pachowitz's private affairs at length. Thus, LeDoux was on notice as to Slocomb's "loose lips." Under such circumstances, the law of invasion of pri-

vacy is not served by immunizing one such as LeDoux as a matter of law. Instead, like the trial court, we conclude that the question of LeDoux's liability was for a jury.

■

¶ 26. The jury found that LeDoux's disclosure of private information to Slocomb violated Pachowitz's right to privacy. We review a jury's finding under the "any credible evidence" standard. *See Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 783, 541 N.W.2d 203 (Ct. App. 1995). Under this standard, we will uphold the jury's determination if there is any credible evidence to sustain the verdict. *Id.* at 782–83.

¶ 27. The evidence allows for the inference that Pachowitz had a special relationship with her co-employees, including Slocomb, and that disclosure of personal and private information about the EMT call would embarrass Pachowitz. The evidence further supports an inference that LeDoux should have appreciated the risk that Slocomb would further disclose Pachowitz's private information. As such, the evidence supports the jury's answer that LeDoux had publicized private medical information concerning Pachowitz. We therefore uphold the trial court's denial of the appellants' motion to change the jury's answer.

## 2. Reckless or Unreasonable Conduct

¶ 28. The appellants next argue that the evidence does not establish that that LeDoux acted unreasonably or recklessly as to whether the information was of legitimate public interest when she contacted Slocomb, thereby failing to prove an essential element of invasion of privacy. As noted above, we review a jury's finding under the "any credible evidence" standard and will

uphold the jury's determination if there is any credible evidence to sustain the verdict. *Id.*

■

¶ 29. We conclude that there was credible evidence to support the jury's finding in this case that LeDoux acted unreasonably or recklessly in disclosing Pachowitz's private information to Slocomb. First, LeDoux testified that she was advised of the confidential nature of patient information in her EMT training sessions and that she was aware prior to the incident on April 21, 2000, that information obtained as an EMT must be kept confidential. Second, LeDoux testified that prior to calling Slocomb she did not "stop and think about whether the information was confidential." Third, as noted earlier, LeDoux was on notice as to Slocomb's propensity to discuss and reveal personal and private information concerning Pachowitz.

¶ 30. This evidence fairly allows for an inference that LeDoux acted unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved. WIS. STAT. § 895.50(2)(c). The jury's verdict reflects its finding that Pachowitz's medical information was not a legitimate public interest and that LeDoux acted unreasonably in disregarding her EMT training and in failing to consider her patient's right to confidentiality prior to contacting Slocomb. Because there is credible evidence to support the jury's finding, we again uphold the trial court's denial of the appellants' motion to change the jury's answer. *See Foseid,* 197 Wis. 2d at 782.

### *Attorney Fees*

¶ ˙31. Having prevailed on her invasion of privacy claim, Pachowitz was entitled to her reasonable attorney fees under the fee shifting provisions of WIS. STAT.

§ 895.50(1)(c). Post verdict, Pachowitz sought attorney fees in the amount of $30,460. The trial court determined that this amount was reasonable and awarded Pachowitz her requested fees. The appellants challenge this determination.

¶ 32. The reasonableness of attorney fees presents a question of law; however, we give weight to the trial court's determination on this issue. *Nelson v. Machut*, 138 Wis. 2d 301, 305, 405 N.W.2d 776 (Ct. App. 1987). This is because "[the trial judge] has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception. [It] has the expertise to evaluate the reasonableness of the fees with regard to the services rendered." *Id.* (citing *Standard Theatres v. Transp. Dept.*, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984)).

¶ 33. The factors to be considered as guides in evaluating the reasonableness of a fee request are set forth in *Siegel v. Leer, Inc.*, 156 Wis. 2d 621, 631, 457 N.W.2d 533 (Ct. App. 1990):

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent.

651

¶ 34. In ruling on Pachowitz's requested attorney fees, the trial court considered the written record, the arguments made by counsel and the billing records. The court found:

> [F]rom a macro-analysis point of view we have a case that ... included various motions and appearances in court, defending a request that the Court of Appeals allow a discretionary appeal[,] ... briefing and argument on the issue of getting to the jury about spreading the rumor, ... preparation and completion of a jury trial, including the jury selection and the trial of the matter, and these post judgment motions .... $30,460 seems reasonable, it is in the right ballpark. It is not surprising, it is not shocking, it is not unusual.
>
> . . . .
>
> I have had a chance to observe the parts [of the file] that came to court and what went in the court file. And comparing that to the billing records and information, they seem fair and reasonable.

¶ 35. Although the appellants single out charges on the billing records that they deem unreasonable, the trial court observed firsthand the results of those expenditures of time and found them to be reasonable. We have likewise reviewed the billing records in light of the consideration set forth in *Siegel* and the entire record in this case. We are satisfied that the time and labor required by a reputable attorney in preparing and trying this case which involved a fairly novel issue could have resulted in the requested fees. Giving weight to the trial court's decision, we conclude that Pachowitz's attorney fees were reasonable. *See Nelson*, 138 Wis. 2d at 305.

## *Offer of Judgment and Offer of Settlement*

### *1. Methodology*

¶ 36. Before we address the validity of LeDoux's offer of judgment and Pachowitz's offer of settlement, we set out the methodology for assessing the sufficiency of such offers.[10]

¶ 37. WISCONSIN STAT. § 807.01(1) addresses offers of judgment by a defendant. It provides in relevant part:

> After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs . . . . If the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint.

¶ 38. WISCONSIN STAT. § 807.01(3) and (4) address offers of settlement by a plaintiff. Subsection (3) provides in relevant part:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect

---

[10] The statute also covers offers of specified damages by a defendant. WIS. STAT. § 807.01(2). Under this scenario, the defendant offers a specified amount of damages "if the defendant fails in the defense" of the action. *Id.* If the offer is not accepted and if the plaintiff prevails but does not recover damages in excess of the offer, neither party is entitled to costs. *Id.* This provision is not at issue in this case. Nonetheless, the methodology applicable to offers of judgment and offers of settlement would also apply to an offer of specified damages.

> therein specified, with costs . . . . If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

Subsection (4) provides in relevant part:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid.

¶ 39. We begin by addressing the standards for assessing the sufficiency of an offer of settlement under WIS. STAT. § 807.01(3). An offer of settlement is valid when it allows the offeree to fully and fairly evaluate the offer from his or her own independent perspective. *Testa v. Farmers Ins. Exch.*, 164 Wis. 2d 296, 302, 474 N.W.2d 776 (Ct. App. 1991). It is the obligation of the party making the offer to do so in clear and unambiguous terms, and any ambiguity in the offer is construed against the drafter. *Ritt v. Dental Care Assocs., S.C.*, 199 Wis. 2d 48, 76, 543 N.W.2d 852 (Ct. App. 1995).

¶ 40. While *Testa* and *Ritt* made these statements in the context of evaluating offers of settlement made by a plaintiff under WIS. STAT. § 807.01(3), we see no reason why the same principles should not apply to offers of judgment made by a defendant under § 807.01(1).[11]

¶ 41. Next, we address the statutory framework of WIS. STAT. § 807.01(1), (3) and (4). These subsections

_____

[11] The same is true of an offer of specified damages pursuant to WIS. STAT. § 807.01(2).

654

confer different remedies to a party who has prevailed on an offer of judgment or an offer of settlement. A defendant who prevails on an offer of judgment is entitled to "costs to be computed on the demand of the complaint." Sec. 807.01(1). A plaintiff who prevails on an offer of settlement is entitled to double costs pursuant to § 807.01(3) and 12% interest on the "amount recovered" pursuant to § 807.01(4).

¶ 42. Despite these differences in remedies, the statute employs a similar mechanism for determining whether the offering party has prevailed and is therefore entitled to the statutory remedies. A defendant has prevailed on an offer of judgment "[i]f . . . the plaintiff fails to recover a more favorable judgment . . . ." Wis. Stat. § 807.01(1). A plaintiff has prevailed on an offer of settlement and is entitled to double costs "[i]f . . . the plaintiff recovers a more favorable judgment . . . ." Sec. 807.01(3). In addition, a plaintiff has prevailed on an offer of settlement and is entitled to 12% interest "[i]f . . . the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement . . . ." Sec. 807.01(4).

¶ 43. The foregoing discussion reveals that there is a three-step methodology that a court employs when determining if an offering party is entitled to the remedies of Wis. Stat. § 807.01:

(1) The court must first determine if the offer was sufficient under the standards set out in the case law. This requires the court to assess whether the offer allowed the other party to fully and fairly evaluate the offer from his or her own independent perspective. *Testa*, 164 Wis.2d at 302;

(2) If the offer is sufficient under *Testa*, the court next

measures the offer against the judgment to determine if the offering party qualifies for the statutory remedies. In the case of an offer of judgment by the defendant, the court inquires whether the plaintiff has failed to recover a more favorable judgment. In the case of an offer of settlement by the plaintiff, the court inquires whether the plaintiff has recovered a more favorable judgment, entitling the plaintiff to double costs under Wis. Stat. § 807.01(3), and whether the plaintiff has recovered a judgment which is equal to or greater than the offer of settlement, entitling the plaintiff to 12% interest on the amount recovered pursuant to § 807.01(4); and

(3) If the offer survives when measured against the judgment, the court must then determine the appropriate remedies allowed by Wis. Stat. § 807.01. In the case of a prevailing offer of judgment by the defendant, the remedy is costs as measured by the demand of the complaint pursuant to subsec. (1). In the case of a prevailing offer of settlement by the plaintiff, the remedy is double costs pursuant to subsec. (3) and 12% interest on the amount recovered pursuant to subsec. (4).[12]

¶ 44. With this methodology in mind, we turn to the offers in this case.

### 2. LeDoux's Offer of Judgment

¶ 45. LeDoux submitted an offer of judgment in the amount of "Five Thousand Dollars ($5,000) together with statutory taxable costs and disbursements." Pachowitz did not accept the offer. Based on this offer, the appellants argued that they were entitled to costs

---

[12] As our ensuing discussion will reveal, the "amount recovered" is not the same as the judgment. *See infra* at ¶¶ 45–49.

pursuant to Wis. Stat. § 807.01(1) because LeDoux's $5000 offer of judgment exceeded Pachowitz's $3000 compensatory damage award. The trial court, however, ruled that LeDoux's offer of judgment was defective because it did not include an allowance for Pachowitz's reasonable attorney fees. In addition, when measuring LeDoux's offer of judgment against the final judgment, the court added Pachowitz's attorney fees to the jury's $3000 compensatory damages.[13] This put the amount of the judgment in excess of LeDoux's $5000 offer of judgment. The appellants challenge both of these trial court actions.

¶ 46. The appellants principally cite to *Dobbratz Trucking & Excavating, Inc. v. PACCAR, Inc.*, 2002 WI App 138, 256 Wis. 2d 205, 647 N.W.2d 315, in support of their argument. There, the court of appeals held that attorney's fees awarded under the fee shifting provisions of the Lemon Law were not embraced by the "amount recovered" language of Wis. Stat. § 807.01(4). *Dobbratz*, 256 Wis. 2d 205, ¶ 30. Therefore, the court ruled that the plaintiff was not entitled to compute the statutory 12% interest on that portion of the judgment. *See id.* In support, *Dobbratz* cited to this court's opinion in *American Motorists Insurance Co. v. R & S Meats, Inc.*, 190 Wis. 2d 196, 214–15, 526 N.W.2d 791 (Ct. App. 1994), where we held that the "amount recovered" language of § 807.01(4) did not include the double cost provisions of Wis. Stat. § 807.01(3). *Dobbratz*, 256 Wis. 2d 205, ¶ 30. Therefore, we concluded that the 12% interest did not apply to such costs. *Id.*, ¶¶ 29, 31. *Dobbratz* also cited to the supreme court's opinion in

---

[13] On this same basis, the trial court determined that Pachowitz's offer of settlement was enforceable because the judgment exceeded the offer.

657

*Nelson v. McLaughlin*, 211 Wis. 2d 487, 497–507, 565 N.W.2d 123 (1997), holding that the "amount recovered" language of § 807.01(4) applied only to that portion of the judgment for which an insurance company was responsible under its policy limits. *Dobbratz*, 256 Wis. 2d 205, ¶ 31. Therefore, the supreme court held that the plaintiff was entitled to compute 12% interest only on that limited portion of the judgment. *Nelson*, 211 Wis. 2d at 501. The core holding of all of these cases is that the legislature did not intend the phrase "amount recovered" in § 807.01(4) to mean "judgment." *See, e.g., Nelson*, 211 Wis. 2d at 500.

¶ 47. We reject the appellants' reliance on *Dobbratz* and the cases cited therein. As noted, those cases addressed whether the 12% interest remedy provided in Wis. Stat. § 807.01(4) applied to certain components of the judgment: (1) attorney fees under a fee shifting statute (*Dobbratz*); (2) double costs under Wis. Stat. § 807.01(3) (*American Motorists*); and (3) all, or only that portion, of a judgment for which an insurance company was liable under its policy limits (*Nelson*). All three cases were concerned with the final step of the methodology we addressed earlier—determining the appropriate remedy provided by the statute.

¶ 48. Here, however, the questions posed by LeDoux's offer of judgment concern the first two steps of the methodology—determining whether LeDoux's offer of judgment satisfied the *Testa* standard, and, if so, whether Pachowitz obtained a judgment more favorable than LeDoux's offer of judgment.

¶ 49. We took pains in *American Motorists* to note that the legislature had made a sharp distinction in Wis. Stat. § 807.01 between "judgment" on the one hand and "amount recovered" on the other. *American Motorists*,

658

190 Wis. 2d at 214. The supreme court made a similar point in *Nelson*, citing favorably to *American Motorists*. *Nelson*, 211 Wis. 2d at 499. We pointed out that the legislature used the term "judgment" as the measuring stick against which the offer was compared. *See American Motorists*, 190 Wis. 2d at 214. However, the legislature used the phrase "amount recovered" as the gauge for determining the proper amount on which the prevailing party could compute 12% interest. Sec. 807.01(4). Here, as noted, we are concerned with comparing Pachowitz's judgment against LeDoux's offer of judgment. We are not concerned with the amount upon which Pachowitz is entitled to compute the 12% interest provision of § 807.01(4). Under this analysis, the trial court correctly determined that the appellants were not entitled to costs under § 807.01(1) because the judgment in the amount of $37,909.86 far exceeded LeDoux's $5000 offer of judgment.

¶ 50. That does not fully answer the issue, however, because the appellants contend that the trial court erred by including Pachowitz's reasonable attorney fees in the judgment, thereby putting the judgment in excess of the offer of judgment. In support, the appellants cite to *Northridge Co. v. W.R. Grace & Co.*, 205 Wis. 2d 267, 556 N.W.2d 345 (Ct. App. 1996), for the proposition that an offer of settlement and the final judgment must be compared exclusive of costs.

¶ 51. However, Pachowitz sued LeDoux under Wis. Stat. § 895.50, which specifically provides for compensatory damages and "[a] reasonable amount for attorney fees." We conclude that when a defendant is sued under a fee shifting statute, that party is on notice that the plaintiff is seeking *not only damages but also reasonable attorney fees*. Accordingly, when making an

659

offer of judgment, the defendant is properly held to include such fees and to so inform the plaintiff. From that it logically follows that the trial court should also include attorney fees in the judgment when it measures the offer against the judgment. Here, LeDoux's offer of judgment said nothing of attorney fees. Instead, it was limited to compensatory damages, costs and disbursements.[14] As noted, it is the obligation of the party making the offer to do so in clear and unambiguous terms, *Ritt*, 199 Wis. 2d at 76, thereby allowing the plaintiff to "fully and fairly evaluate the offer from his [or her] own independent perspective." *Testa*, 164 Wis. 2d at 302. LeDoux's offer of judgment did not live up to these standards. At best, it was a partial settlement offer relating only to compensatory damages, costs and disbursements. But WIS. STAT. § 807.01 does not envision partial settlements; it envisions complete settlements.

¶ 52. We hold that LeDoux's offer of judgment was invalid because it failed to include an allowance for Pachowitz's reasonable attorney fees. We further hold that the trial court properly included such fees in the judgment when measuring the offer against the judgment. Therefore, the trial court properly denied the appellants' application for costs under WIS. STAT. § 807.01(1).

### 3. Pachowitz's Offer of Settlement

¶ 53. Prior to trial Pachowitz filed an offer of settlement which offered to "settle this matter with the Defendants, Katherina LeDoux, Tess Corners Volun-

---

[14] The appellants contend that LeDoux's offer of judgment was intended to include attorney fees. That contention is not borne out by the clear language of the offer nor by the record.

teer Fire Department and Continental Western Insurance Company, for the sum of Twenty-Five Thousand Dollars ($25,000), which includes statutory attorneys' fees as allowed by Wis. Stat. § 895.50, together with taxable costs." The offer was made pursuant to Wis. Stat. § 807.01(3) and (4). The appellants did not accept the offer. Post verdict, the appellants challenged Pachowitz's offer as invalid because it proposed a single settlement figure to multiple defendants.

¶ 54. In *Wilber v. Fuchs*, 158 Wis. 2d 158, 160, 461 N.W.2d 803 (Ct. App. 1990), we held that a plaintiff's single offer of settlement directed individually to multiple defendants was not a valid offer of settlement pursuant to Wis. Stat. § 807.01(3). In *Wilber*, all five individual defendants, each alleged to be negligent in different ways, were confronted with one offer of settlement, which recited only one aggregate settlement figure for all claims relating to the incident. *Wilber*, 158 Wis. 2d at 163–64. As such, the offer of settlement "did not permit each defendant to individually evaluate the offer *from the perspective of that defendant's assessment of his or her own exposure.*" *Id.* at 164.

¶ 55. Here, the trial court rejected LeDoux's argument that Pachowitz's offer was invalid because it was made to multiple defendants. The trial court found that because Continental was "going to pay the bill," the fact that the offer was made to multiple defendants did not preclude the defendants from being able to evaluate the offer. However, the trial court's ruling overlooked that at the time of Pachowitz's offer of settlement, an insurance coverage dispute existed between Continental and LeDoux.

¶ 56. From the very outset of this case, Continental's and LeDoux's position were adverse.

While Continental filed an answer on behalf of Tess Corners, it did not file an answer on behalf of LeDoux. Instead, Continental's answer denied that LeDoux was acting within the scope of her employment when she communicated with Slocomb. Based on this allegation, Continental's answer also raised the affirmative defense that LeDoux's conduct was not covered under the Continental policy. As a result, separate counsel represented LeDoux. Thus, Continental's position was adverse to that of LeDoux when Pachowitz made her offer of settlement, and this condition continued during the allotted period of time for acceptance of the offer.[15]

¶ 57. That Continental later abandoned its coverage challenge at the close of the evidence is not relevant for purposes of determining the validity of the offer at the time it was made. *See Ritt*, 199 Wis. 2d at 76. In light of the coverage dispute at the time of Pachowitz's offer, it would have been impossible for Continental (or LeDoux) to evaluate Pachowitz's offer from an independent perspective and to intelligently assess each party's degree of exposure. *See Wilber*, 158 Wis. 2d at 164. In summary, Pachowitz's offer of settlement fails to survive the first step of the methodology. We reverse that portion of the judgment awarding Pachowitz double costs and 12% taxable interest pursuant to Wis. Stat. § 807.01(3) and (4).

### *CONCLUSION*

¶ 58. We affirm the following rulings of the trial court. LeDoux's communication to a single person did not, as a matter of law, preclude Pachowitz's claim for

---

[15] A defendant must accept an offer of settlement before trial and within ten days after receipt of the offer. Wis. Stat. § 807.01(3).

invasion of privacy under Wis. Stat. § 895.50 under the facts of this case. The evidence was sufficient to support the jury's finding that LeDoux invaded Pachowitz's privacy. Pachowitz's reasonable attorney fees are $30,460. LeDoux's offer of judgment was invalid because it did not include an allowance for Pachowitz's reasonable attorney fees. Moreover, the judgment exceeded LeDoux's offer of judgment.

¶ 59. We reverse the trial court's ruling enforcing Pachowitz's offer of settlement. We hold that the offer was invalid because it was made to multiple defendants with adverse interests. Pachowitz is therefore not entitled to double costs or 12% interest under Wis. Stat. § 807.01(3) and (4).

¶ 60. We affirm in part, reverse in part, and remand with directions that the trial court enter judgment consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.