Cheryl OLSON, and Kenneth Olson, Plaintiffs-Appellants,†

v.

RED CEDAR CLINIC, and Mayo Insurance Company, Ltd., a foreign corporation, Defendants-Respondents.

Court of Appeals

*No. 03–2198. Submitted on briefs March 15, 2004.—Decided April 27, 2004.*

2004 WI App 102

(Also reported in 681 N.W.2d 306.)

728

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *J. Drew Ryberg* of *Ryberg & Happe, S.C.*, Eau Claire.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Donald K. Schott, Sarah E. Coyne* and *Emily M. Feinstein* of *Quarles & Brady LLP*, Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Kenneth and Cheryl Olson appeal a summary judgment dismissing their claims against Red Cedar Clinic. The Olsons argue the clinic violated Wis. Stat. § 895.50 by wrongfully disclosing to their son's school information about Cheryl contained in their son's records.[1] They also argue the clinic violated Cheryl's right to privacy under Wis. Stat.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

§ 51.30. The circuit court determined the clinic had no duty to Cheryl under either statute and therefore she had no claim. We agree that the Olsons have no claim against the clinic and affirm the judgment.

## BACKGROUND

¶ 2.  The Olsons' son Jacob received counseling from Red Cedar Clinic in February and March 1999. At one of Jacob's counseling sessions, attended by Kenneth, personal information about Cheryl was discussed. Cheryl was not at that session. During this same period, Cheryl was also receiving treatment at the clinic.

¶ 3.  Later, Jacob was having difficulty at school and the school psychologist wanted to see Jacob's clinic records. The Olsons were willing to authorize release of Jacob's records to the school, but Cheryl did not want any information regarding herself to be disclosed. She signed an authorization that she claims required exclusion of any information about her.

¶ 4.  The clinic sent Jacob's records to the school psychologist. Contrary to Cheryl's expectations, the records contained information about her. Cheryl promptly revoked the authorization. She also went to the school and redacted portions of the record she did not want the school to see.

¶ 5.  The Olsons filed this action against the clinic. The clinic filed a motion for summary judgment. The court granted the motion, determining that the clinic had no duty to Cheryl because the records were Jacob's, not Cheryl's. The court denied the Olsons' motion for reconsideration.

## DISCUSSION

¶ 6.  We review summary judgments independently, applying the same standard as the trial court.

*Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cody v. Dane County*, 2001 WI App 60, ¶ 11, 242 Wis. 2d 173, 625 N.W.2d 630. We view the facts in the light most favorable to the nonmoving party. *Id.*

A. Right to Privacy

¶ 7.   The Olsons first argue that the clinic violated Cheryl's right to privacy under WIS. STAT. § 895.50(2)(a). That section defines invasion of privacy as the "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." Disclosure of medical records has been found to be an invasion of privacy. *See generally, Pachowitz v. LeDoux*, 2003 WI App 120, 265 Wis. 2d 631, 666 N.W.2d 88.

■■

¶ 8.   In an action for invasion of privacy under WIS. STAT. § 895.50, the Olsons must prove:   (1) there has been a "public disclosure" of facts regarding Cheryl, (2) the facts disclosed were private, (3) the private matter is one that would be highly offensive to a reasonable person of ordinary sensibilities, and (4) the clinic acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter or with actual knowledge that none existed. *See Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 929–30, 440 N.W.2d 548 (1989).

■■

¶ 9.   The first element requires that there was a public disclosure of facts regarding Cheryl. Public dis-

closure in this context means that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 929 (citing RESTATEMENT (SECOND) OF TORTS § 652D cmt. a). Public disclosure may also occur "where 'a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed.' " *Hillman v. Columbia County,* 164 Wis. 2d 376, 395 n.10, 474 N.W.2d 913 (Ct. App. 1991) (citations omitted).

¶ 10. Here, the records were sent to only one person: the school psychologist. Further, the psychologist was prohibited from telling anyone what was in the records. *See* WIS. ADMIN. CODE § HFS 92.03(1)(h) (school psychologists may not reveal "facts, data, information, records or communication" about a patient without the patient's consent). The Olsons assert the records were left on a kitchen table at the school so anyone could have seen them. However, the records were in an envelope and there is no evidence that they in fact were seen by anyone other than the school psychologist. In order to find public disclosure, "the matter must be regarded as substantially certain to become one of public knowledge." *Zinda,* 149 Wis. 2d at 929 (citation omitted). There is nothing in the record to suggest that this was the case here.

¶ 11. Relying on *Pachowitz,* Cheryl asserts that although the disclosure here was only to the school psychologist, she had a special relationship with the psychologist. However, other than citing *Pachowitz,* Cheryl does not develop this argument. We need not consider arguments broadly stated but not specifically argued. *Fritz v. McGrath,* 146 Wis. 2d 681, 686, 431

733

N.W.2d 751 (Ct. App. 1988). In any event, we consider the disclosure to the psychologist to be materially different from the disclosure in *Pachowitz*. There, the private information was told to Pachowitz's co-worker, who in turn told other people. The defendant knew that the person she gave the information to had "loose lips." We stated that the defendant "should have appreciated the risk that [the co-worker] would further disclose Pachowitz's private information." *Pachowitz*, 265 Wis. 2d 631, ¶ 27. Here, there is no evidence that Cheryl and the school psychologist had any relationship whatsoever, let alone a special relationship. Further, there is no evidence that the psychologist was known to have "loose lips." To the contrary, because of the psychologist's obligation to keep the information confidential, there was virtually no risk that he would further disclose Cheryl's information.

■

¶ 12. In order for the Olsons' claim to succeed under WIS. STAT. § 895.50(2)(c), all four elements must be proven. There are no material facts in dispute regarding the first element and the Olsons' claim fails. Therefore we need not discuss the remaining elements.

B. Unauthorized Disclosure

¶ 13. The Olsons also argue the clinic disclosed information about Cheryl without authorization, contrary to WIS. STAT. § 51.30. The Olsons assert that the authorization specifically excluded release of any information about Cheryl in Jacob's records. Thus, the Olsons claim a violation of WIS. STAT. § 51.30(9)(a), which allows for damages for release of medical records without consent.

¶ 14. WISCONSIN STAT. § 51.30(4) states that treatment records are confidential to the subject individual and can only be released with that person's consent. The subject individual is the one who receives treatment. WIS. STAT. § 51.30(1)(b). In this case that individual is Jacob. Thus, the right of confidentiality is Jacob's, not Cheryl's. In addition, the fact that the Olsons had the power to consent to the release of Jacob's records does not give them an expectation of confidentiality as to information about them in Jacob's records. WISCONSIN STAT. § 51.30(5) allows parents to authorize the release of their minor child's information, but it does not change the nature of the privilege.

¶ 15. The Olsons further argue that because Cheryl was also a patient at the clinic, the clinic had an obligation to protect her privacy. This statement is true as to her own medical records. But the simple fact that she is a patient at the same clinic as Jacob does not give her confidentiality rights under WIS. STAT. § 51.30(4) as to Jacob's records.

*By the Court.*—Judgment affirmed.