COURT OF APPEALS
DECISION
DATED AND FILED

September 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP1239**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV353

**IN COURT OF APPEALS
DISTRICT IV**

HEIDI BLACK,

    PLAINTIFF-APPELLANT,

V.

JEFFREY ALLEN KELLY AND MID-WEST MANAGEMENT, INC.,

    DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

¶1    NASHOLD, J. Heidi Black appeals the dismissal on summary judgment of her claim of public disclosure of private facts brought against her ex-husband, Jeffrey Allen Kelly, and his employer, Mid-West Management, Inc.

(Mid-West) (together, Defendants).[1]  *See* WIS. STAT. § 995.50(2)(am)3. (2019-20).[2]  Black argues that Kelly publicized her financial disclosure statement (FDS) when he uploaded a blank page containing a hyperlink to the FDS to an internal folder on a work website, which caused her financial information to be available through an internet search.  However, the undisputed facts establish that other than Black, only one other person—Black's trusted friend—saw the FDS on the internet before it was removed.  On this set of facts, we conclude that Black cannot meet the "publicity" element of her claim, because she cannot show that "the matter [wa]s made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *See* *Olson v. Red Cedar Clinic*, 2004 WI App 102, ¶9, 273 Wis. 2d 728, 681 N.W.2d 306, citing *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 929, 440 N.W.2d 548 (1989).[3]  Accordingly, we affirm.

## BACKGROUND

¶2      The following material facts are undisputed.  Kelly is an on-air radio personality with 94.1 WJJO, a Madison radio station, and Mid-West is his employer.  Kelly and Black married in 2007 and divorced in 2016.  Per statute, as

---

[1] Black brought separate claims of public disclosure of private facts against Kelly and Mid-West.  Because the operative facts overlap, for ease of reading, we discuss the "claim" in the singular.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] WISCONSIN STAT. § 995.50(2)(am)3., setting forth the tort of public disclosure of private facts, is identical to prior statutes providing for this cause of action.  *See* WIS. STAT. § 895.50(2)(c) (2003-04); WIS. STAT. § 995.50(2)(c) (2017-18).  Therefore, throughout this decision, we rely on case law discussing this tort without specifically noting which version of the statute was then in effect.

part of their divorce, the parties exchanged FDSs. *See* WIS. STAT. § 767.127(1) (requiring full disclosure of financial information in a divorce action). In addition to setting forth her assets and liabilities, Black's FDS includes other sensitive personal information, such as her social security number, insurance policy numbers, and bank names with the last four digits of the account numbers.

¶3    On one occasion, Peter Ellenbecker, Black's friend, used the Google search engine to search for the name "Heidi Black." On the Google search results page, Ellenbecker saw an entry called "Heidi Black, 941JJO." Ellenbecker clicked on this link and was able to view Black's FDS. Ellenbecker contacted Black, told her what he had found, and emailed her a hyperlink to the FDS.[4]

¶4    Black opened the hyperlink and viewed her FDS. Black also performed a Google search for "Heidi Black," and she observed that her FDS appeared to be accessible through the WJJO website. Black contacted Kelly, told him what she had found, and asked him "to make that go away right now." Kelly told Mid-West personnel about the matter. Mid-West removed the FDS from the website, and it was then no longer accessible. Kelly sent a text message to Black to apologize, stating, "I have zero idea how or what happened but it's gone forever." Ellenbecker's discovery of the FDS, his communication with Black, her communication with Kelly, and the FDS's removal from the WJJO website all occurred on December 30, 2019. Because Defendants do not dispute the point, for purposes of this decision, we will assume that Kelly was the person who made the FDS available through an internet search.

---

[4] "The definition of a hyperlink is text or an image within a file on your computer that you can click on that gives access to another document or image." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 372 n.2 (E.D.N.Y. 2015) (internal quotation marks and quoted source omitted).

¶5    Black sued Defendants for invasion of privacy—public disclosure of private facts.  *See* WIS. STAT. § 995.50(2)(am)3.  Black alleged that, "[o]n or around May 24, 2018, Black's financial disclosure statement was posted as a PDF file to the WJJO website, under a [named] folder."  Therefore, Black alleged, her "financial disclosure statement was … available to the public for at least eighteen months."

¶6    Defendants moved for summary judgment, submitting, among other evidence, the affidavit and deposition transcript (with accompanying exhibits) of Robert Moore, a web developer for Mid-West.  That evidence includes the following averments and testimony.  Black's FDS was accessible via a hyperlink on an "attachment page":  a page that contains a hyperlink but is otherwise blank.  During the creation of a draft web page, this attachment page (containing the hyperlink to the FDS) was uploaded to a folder within the WJJO website.  The attachment page, however, was never "incorporated" into a final post.  Thus, "[t]here was no link to the attachment page on the WJJO website, so one would not be able to access the [FDS] when navigating within the WJJO website."  Instead, the FDS was only available through the type of search that Ellenbecker performed.  That is, to view the FDS, one would have to:  (1) search for Black's name using Google or another search engine; (2) click on the search engine link, which opened the attachment page; and (3) click on the hyperlink within the attachment page.

¶7    Moore further opined that Black's FDS was only accessed twice.  To reach this conclusion, Moore evaluated several reports generated by Google Analytics, a Google service that analyzes website traffic and activity.  The Google Analytics reports provide data about web traffic to six discrete locations, all within

the WJJO website, that relate to the search term "Heidi." Relying on these reports, Moore concluded that there were only two distinct visits to Black's FDS.[5]

¶8    Based on this evidence, and as pertinent to this appeal, Defendants argued that Black could not show that her financial information was publicized, as required by WIS. STAT. § 995.50(2)(am)3. Defendants contended that only two people (Ellenbecker and Black) had viewed the FDS online. Defendants pointed out that, per Ellenbecker's deposition testimony, he had not disclosed the FDS or its contents. Black, moreover, testified that she trusted Ellenbecker and had no reason to believe that he either had shared or would share the FDS. Therefore, Defendants argued, Black had not met the "publicity" element of her claim as a matter of law.

¶9    As we discuss further below, Black disputed Moore's conclusion that only two people had viewed the FDS online. Specifically, Black argued that the same Google Analytics reports upon which Moore relied, along with his deposition testimony and affidavit, supported the reasonable inference that the FDS had been viewed on twenty-seven separate occasions. Thus, Black argued, up to twenty-five people other than she and Ellenbecker might have viewed the FDS. Relatedly, Black pointed to Kelly's deposition testimony that he had "verified" that the FDS was accessible through the WJJO website. According to Black, the reasonable inference from this testimony was that at least three people had viewed the FDS online—meaning that the Google Analytics reports were inaccurate or that Moore's expert conclusion was wrong.

---

[5] Black does not dispute that Google Analytics tracks activity on a given website, regardless of the method used to visit or access the website. In other words, Google Analytics does not track only website traffic via the Google search engine.

¶10    The circuit court rejected Black's arguments and determined that there was no reasonable dispute as to the number of people (two) who had viewed the FDS online. Because it was undisputed that Ellenbecker and Black had viewed the FDS, it followed that Ellenbecker was the only person to whom Black's financial information had been disclosed. Furthermore, Ellenbecker's undisputed testimony was that he had not shared the FDS or its contents. The court remarked, "I don't think this information, having two people see it, with the evidence that I have, constitutes publicity." The court therefore concluded that, as a matter of law, Black could not satisfy the "publicity" element of her claim of public disclosure of private facts.

¶11    The circuit court further stated that it would entertain a request from Black to "ask for more time," so that she could consult with an expert who might be able to provide an alternative opinion as to how many people viewed the FDS. The court therefore explained that it would postpone signing the summary judgment order for one week. Black did not request more time or file additional evidence or briefing on this matter. The court dismissed Black's claim with prejudice, and Black appeals.

## DISCUSSION

*I.  Standard of Review and Principles of Law*

¶12    We review a decision on summary judgment de novo. ***Laughland v. Beckett***, 2015 WI App 70, ¶15, 365 Wis. 2d 148, 870 N.W.2d 466. Summary judgment is appropriate where the pleadings and evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); ***Laughland***, 365 Wis. 2d 148, ¶15. This dispute also requires that we interpret WIS. STAT. § 995.50, which likewise

involves a question of law that we determine de novo. ***Teschendorf v. State Farm Ins. Cos.***, 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶13    Under WIS. STAT. § 995.50, "[t]he right of privacy is recognized in this state," and one whose privacy is "unreasonably invaded" is entitled to various forms of relief, including compensatory damages and attorney fees. Sec. 995.50(1). Section 995.50(2)(am) recognizes four categories of invasion of privacy claims, including the claim at issue here: public disclosure of private facts. Section 995.50(2)(am)3. defines this cause of action as follows:

> Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

¶14    Thus, there are four elements to a claim of public disclosure of private facts. ***Zinda***, 149 Wis. 2d at 929. First, the plaintiff must show that there was "a public disclosure of facts regarding the plaintiff." ***Id.*** "In other words, there must be 'publicity,' which means that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." ***Id.***, citing RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. "Second, the facts disclosed must be private facts." ***Zinda***, 149 Wis. 2d at 929. "Third, the private matter made public must be one which would be highly offensive to a reasonable person of ordinary sensibilities." ***Id.*** at 930. Finally, "the defendant must act either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed." ***Id.***

## II. *The Publicity Element of Black's Claim*

¶15    Black argues that the circuit court erred as a matter of law in concluding that she could not establish the "publicity" element of her claim of public disclosure of private facts.  Black raises three arguments as to why Kelly's disclosure of her financial information either raises a genuine issue of material fact as to whether publicity occurred or constitutes publicity as a matter of law.

¶16    First, Black argues that there is a genuine issue of material fact as to whether additional people besides she and Ellenbecker viewed the FDS via an internet search.  Second, she contends that, consistent with ***Pachowitz v. LeDoux***, 2003 WI App 120, ¶¶19-21, 24-25, 265 Wis. 2d 631, 666 N.W.2d 88, there is a genuine issue of material fact as to whether *Ellenbecker* had disclosed or would disclose her financial information, and that such actual or potential disclosure satisfies the publicity requirement.  Third, she argues that Kelly's making her FDS available on the internet constitutes publicity per se, in that this was a communication to the public at large.  *See **Zinda***, 149 Wis. 2d at 929 ("It has been stated that a publication in a newspaper, even of a small circulation, may be sufficient to give publicity within the meaning of the term."); *see also* RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. (AM. L. INST. May 2022 update) ("[A]ny publication in a newspaper or a magazine, even of small circulation … or any broadcast over the radio … is sufficient to" meet the "publicity" element of this claim).  We reject these arguments and conclude that Defendants are entitled to judgment as a matter of law.

### A.  The number of people who viewed Black's FDS online

¶17    Black argues that Defendants' own summary judgment evidence supports the reasonable inference that more than two people accessed her FDS

online. Accordingly, Black argues, there is a genuine issue of material fact as to whether her financial information was publicized under WIS. STAT. § 995.50(2)(am)3.

¶18 As discussed above, the evidence provided by Defendants' expert Moore is that Black's FDS was accessible through an "attachment page" (a page containing a hyperlink to the FDS). According to Moore, the Google Analytics reports showed that there were twenty-seven discrete visits, or "unique pageviews," to the attachment page. Crucially, however, these reports showed only two "unique pageviews" *to the FDS itself*. Moore therefore opined that Black's FDS was only viewed twice.

¶19 Black's argument to the contrary stems primarily from her own view of how the Google Analytics reports should be interpreted. She points out that, on average, visitors to the attachment page spent roughly the same amount of time visiting that site as did visitors to the FDS itself: two minutes and twenty seconds visiting the attachment page, versus two minutes and twelve seconds visiting the FDS. Black contends that there is no explanation for why visitors to the attachment page would "sit and stare for minutes at a time" at a blank page. Therefore, Black argues, we should infer that these visitors were actually viewing the FDS. But Moore's uncontroverted expert opinion puts this argument to rest, in that he specifically opined that, per the Google Analytics reports, there were only two visits to the FDS itself. In the face of this expert evidence, we will not ourselves rely on Black's unsupported reading of the Google Analytics reports to speculate, as Black does, that the average length of time visitors spent looking at the attachment page somehow means that these visitors must have taken the next step and looked at the FDS. Indeed, Moore's expert opinion was that only twice did someone actually open the hyperlink to the FDS.

¶20 Black further argues that the Google Analytics reports or Moore's analysis must be inaccurate because, based on the witness testimony, at least three people—Black, Kelly, and Ellenbecker—viewed the FDS. Black and Ellenbecker indeed testified that they accessed the FDS by clicking on a hyperlink (Ellenbecker found the hyperlink through a Google search, and Black opened the hyperlink that Ellenbecker had emailed to her). Kelly, however, never stated that he accessed the FDS in this manner or at all. Rather, Kelly testified that he "verif[ied] that the document was indeed where … Black said it was" and then told Mid-West personnel to remove the FDS from the WJJO website. That Kelly "verified" the FDS's location does not mean that he opened the hyperlink (*i.e.,* that he accessed the FDS using a method that would be reflected as a "unique pageview" in the Google Analytics reports). Therefore, Black fails to offer a basis in the record to support the reasonable inference that there is some inaccuracy in Defendants' evidence, which might raise a genuine issue of material fact as to how many people viewed the FDS.

¶21 We reiterate that Black did not submit any evidence with her summary judgment response that contradicted Moore's expert conclusion or otherwise supported these two arguments. Nor did she take the circuit court up on its offer to allow Black to submit additional evidence on this point that might have affected the court's ruling. We therefore conclude that Black has failed to establish a genuine issue of material fact as to how many people accessed her FDS online. Rather, Defendants' evidence shows that only two people accessed the FDS: Black and Ellenbecker. Accordingly, there is no genuine dispute that Ellenbecker was the sole person to directly learn of Black's financial information from Kelly's internet disclosure.

B. Disclosure of financial information to or by Ellenbecker

¶22    Black alternatively argues that, even assuming that Ellenbecker was the only person besides herself to view the FDS online, the question of whether this constitutes "publicity" should not have been decided on summary judgment. In support of this position, Black directs us to *Pachowitz*, 265 Wis. 2d 631.  In that case, Pachowitz sued LeDoux, an emergency medical technician, after LeDoux shared information about Pachowitz's possible overdose with Pachowitz's coworker at a local hospital, who then told other hospital staff.  *Id.*, ¶¶4-7.  LeDoux had met the coworker socially two weeks earlier; on that occasion, the coworker "spoke about Pachowitz and her medical condition."  *Id.*, ¶6.  LeDoux "gained the impression" that Pachowitz and the coworker "were very close friends"; therefore, LeDoux phoned the coworker "after the EMT emergency response because she was concerned about Pachowitz and thought [the coworker] could possibly be of assistance to Pachowitz."  *Id.*, ¶¶6-7.

¶23    LeDoux moved for summary judgment on the ground that her disclosure to the coworker could not, as a matter of law, satisfy the "publicity" element of Pachowitz's claim of public disclosure of private facts.  *Id.*, ¶10.  The circuit court denied LeDoux's motion, and we upheld that ruling.  *Id.*, ¶¶2-3, 10.  We "reject[ed] the … assertion that a disclosure of private information to one person can never constitute 'publicity,'" noting that the relevant case law did not necessarily require a disclosure to more than one person.  *Id.*, ¶21.  Thus, summary judgment was not appropriate on Pachowitz's claim because

> the character and nature of the one person to whom the offending information was communicated, here [the coworker], was a matter that had to be probed at a full trial. As the trial court aptly stated, there was a genuine issue of material fact as to "the type and character of [the coworker]" because there was no evidence as to whether

> [the coworker] was "the biggest gossip in Muskego and [the hospital employing Pachowitz and the coworker]" or whether "she had the stiffest upper lip of anyone in the state."

*Id.* In support of our conclusion, we pointed to evidence indicating that the coworker did, in fact, have "loose lips" and that LeDoux knew about this character trait (after all, this is how LeDoux first learned about Pachowitz and her medical condition). *Id.*, ¶25.

¶24 We further discussed persuasive authority holding that a disclosure to one or a few people may constitute "publicity" where the "plaintiff has a special relationship with the individuals to whom the matter was disclosed." *Id.*, ¶22. We observed, "[T]he rationale behind this rule is that the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people." *Id.* Thus, "[w]hen a special relationship exists, [']the public['] can include one person or small groups such as fellow employees, club members, church members, family or neighbors." *Id.*, ¶23. As applied to Pachowitz's situation, we noted that Pachowitz's husband had asked that Pachowitz not be transported to the hospital where she and the coworker worked. *Id.*, ¶25. This evidence "support[ed] an inference that Pachowitz wanted to avoid disclosure of her need for emergency medical care to her fellow employees." *Id.* Thus, for two separate but related reasons, we concluded that Pachowitz's claims could not be decided on summary judgment and that "disclosure of private information to one person or to a small group does not, as a matter of law in all cases, fail to satisfy the publicity element of an invasion of privacy claim." *Id.*, ¶24.

¶25 Notably, *Pachowitz* does *not* hold that the "publicity" determination contains a factual component that can *never* be decided on summary judgment.

Thus, in ***Olson***, 273 Wis. 2d 728, ¶¶4-5, 10-11, we upheld the summary judgment dismissal of a claim of public disclosure of private facts brought against a clinic that shared the plaintiff's medical information with the school psychologist at her son's school. We observed that "the records were sent to only one person: the school psychologist," who "was prohibited from telling anyone what was in the records." ***Id.***, ¶10. In addition, there was no evidence indicating that the records were in fact seen by anyone besides the psychologist. ***Id.*** We also noted that there was no evidence of any "special relationship" between the plaintiff and the psychologist. ***Id.***, ¶¶9, 11. Thus, we contrasted the case with ***Pachowitz***:

> There, the private information was told to Pachowitz's co-worker, who in turn told other people. The defendant knew that the person she gave the information to had "loose lips." We stated that the defendant "should have appreciated the risk that [the co-worker] would further disclose Pachowitz's private information." Here, there is no evidence that [the plaintiff] and the school psychologist had any relationship whatsoever, let alone a special relationship. Further, there is no evidence that the psychologist was known to have "loose lips." To the contrary, because of the psychologist's obligation to keep the information confidential, there was virtually no risk that he would further disclose [the plaintiff's] information.

***Id.***, ¶11 (citation omitted).

¶26 Our case law therefore instructs that a claim of public disclosure of private facts is not precluded, as a matter of law, solely because the defendant disclosed private facts to only one or a small number of third parties. Rather, at least two factual disputes may make summary judgment inappropriate. First, there may be a genuine issue of material fact as to whether the "character and nature" of the third party, ***Pachowitz***, 265 Wis. 2d 631, ¶21, means "that the matter must be regarded as substantially certain to become one of public knowledge," ***Zinda***, 149 Wis. 2d at 929. *See also* ***Olson***, 273 Wis. 2d 728, ¶¶10-11. Second, there may be

a genuine issue of material fact as to whether the third party had a "special relationship" with the plaintiff, such that the disclosure to the third party was "just as devastating" as a disclosure to a wider audience might have been. *Pachowitz*, 265 Wis. 2d 631, ¶¶22-25; *Olson*, 273 Wis. 2d 728, ¶¶9, 11. It is the facts of the particular case that determine whether these (or other) considerations might preclude summary judgment on a claim of public disclosure of private facts.

¶27 Here, Ellenbecker testified that he had not shared Black's FDS or its contents. Black, for her part, testified that she considered Ellenbecker a trusted friend and had no reason to think that he either had disclosed or would disclose her FDS. Thus, Defendants argued to the circuit court, Black could not establish the publicity element of her claim as a matter of law.

¶28 In her reply brief, and for the first time, Black argues that Ellenbecker's actions and character are relevant to determining whether she meets the "publicity" element of her claim. Black points out that Ellenbecker initially testified that he did not print, save, or share the FDS. Black argues, however, that "this testimony was exposed as false in the course of the deposition, when it was established that … Ellenbecker had saved the document, and in fact produced it." On this point, Black references Ellenbecker's subsequent testimony that he had both downloaded the FDS and provided it to Black's counsel. Ellenbecker further testified that he did not delete the FDS "permanently" because he "didn't know if it would be needed again" (presumably, in the litigation). Black implies that Ellenbecker's purported change in testimony creates a genuine issue of material fact as to whether her financial information is "substantially certain to become one of public knowledge." *See Zinda*, 149 Wis. 2d at 929.

14

¶29    Preliminarily, it is unclear whether Black means to argue that Ellenbecker *had shared* her financial information or if she is arguing only that Ellenbecker *might share* the information in the future.  If Black means to argue the former, she does not explain— beyond this reference to "false" testimony—why Ellenbecker's clarifying or changing his testimony about saving her FDS supports the reasonable inference that he had disclosed her financial information.[6]  If Black means to argue the latter, she cites no case law and develops no argument supporting the premise that—absent any "special relationship" between the plaintiff and the third party, *see **Pachowitz***, 265 Wis. 2d 631, ¶¶22-23—the mere *potential* for future disclosure, without the third party's having *already* disclosed any private facts, is sufficient to establish publicity under WIS. STAT. § 995.50(2)(am)3.

¶30    In any event, Black has forfeited her argument that Ellenbecker's character or actions are relevant to determining whether she meets the "publicity" element of her claim.  On summary judgment, Defendants consistently argued that Ellenbecker was trustworthy and had not shared any of Black's financial information.  Black provided no contrary evidence and, in fact, made no argument at all on these points.  Had Black done so, Defendants potentially could have introduced additional evidence supporting their position or made additional arguments to the circuit court.  Thus, this argument has been forfeited, and Black does not offer (nor do we discern) any reason to disregard the forfeiture rule.  *See State v. Huebner*, 2000 WI 59, ¶¶11-12 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727

---

[6] It is unclear whether Black means to argue that Ellenbecker's providing a copy of the FDS to her counsel constitutes a disclosure.  If so, we reject this argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may choose not to address vague or undeveloped arguments).

(the forfeiture rule—that issues must be raised to the circuit court—"is an essential principle of the orderly administration of justice" that exists, in part, to allow "both parties and the trial judge notice of the issue and a fair opportunity to address the" argument, to "encourage[] attorneys to diligently prepare for and conduct trials," and to "prevent[] attorneys from 'sandbagging' errors, or failing to [raise an argument] for strategic reasons").

¶31 We note a separate but related reason to reject Black's argument. Despite knowing Defendants' position on Ellenbecker's character and actions, Black did not make any argument on this point until her reply brief. Thus, Defendants have actually had no opportunity to address Black's position that Ellenbecker gave "false" testimony, that Ellenbecker cannot be trusted, or that Ellenbecker had shared or would share her financial information. In fairness to respondents, we generally do not consider arguments raised for the first time in the reply brief. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). We decline to do so here.

¶32 Finally, we note that Black has never argued that she meets the publicity element because she has a "special relationship" with Ellenbecker, such that she had particular reasons for not wanting him to know her financial information. *See Pachowitz*, 265 Wis. 2d 631, ¶¶22-25; *Olson*, 273 Wis. 2d 728, ¶¶9, 11.

¶33 We therefore conclude that Black has not demonstrated that the disclosure of the FDS to Ellenbecker means that her financial information is "substantially certain to become one of public knowledge." *See Zinda*, 149 Wis. 2d at 929.

C. Internet publication as "publicity per se"

¶34     Finally, Black argues that we should follow the lead of other jurisdictions holding that an internet publication constitutes "publicity per se"—in the same sense that, for example, publication in a newspaper may be "publicity"—regardless of the number of people who viewed the information. *See, e.g.*, **Yath v. Fairview Clinics, N.P.**, 767 N.W.2d 34, 42-45 (Minn. Ct. App. 2009) (under the theory that "a single communication to the public" constitutes publicity, "the publicity element of an invasion-of-privacy claim is satisfied when private information is posted on a publicly accessible Internet website," and "[t]he number of actual viewers is irrelevant"). Black argues that it is "surely a communication to the public at large" to "[e]xpos[e] the [FDS] to the world's dominant search engine … thereby making it available to anyone who cared to search for Ms. Black's name."

¶35     Given the specific circumstances of this case, we disagree. The tort of public disclosure of private facts hinges on there being a public communication. *See* WIS. STAT. § 995.50(2)(am)3. (requiring "public disclosure"); **Zinda**, 149 Wis. 2d at 929 (interpreting § 995.50(2)(am)3. as requiring "publicity," meaning that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."). Thus, "publicity" differs from "publication"—as the term "publication" is used "in connection with liability for defamation"—in that a "publication" "includes *any* communication by the defendant to a third person." RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. (emphasis added). "The distinction, in other words, is one between private and public communication," *id.*, with only the defendant's *public* communication being actionable under § 995.50(2)(am)3., **Zinda**, 149 Wis. 2d at 929.

17

¶36 Here, Kelly made Black's FDS available through an internet search, but Kelly's "communication" was not obviously or necessarily "public." Kelly, while creating a draft web page, uploaded an attachment page (containing a hyperlink to the FDS) to a folder within the WJJO website. Per Moore's uncontroverted opinion, the attachment page was never "incorporated" into a final post, meaning that "one would not be able to access the [FDS] when navigating within the WJJO website." Under these circumstance, we cannot conclude that the internal uploading of the FDS, without actual publication on the WJJO website, constitutes a per se communication to the public at large. *See Zinda*, 149 Wis. 2d at 929.

¶37 Moreover, a communication to the public at large necessarily means that the information *reaches* the public. *See id.*; *see also* RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. (a public communication is "a communication that reaches, or is sure to reach, the public."). Although—in a general sense—Black's financial information was (in her words) "[e]xpose[d] … to the world's dominant search engine," it does not necessarily follow that any information accessible via a search engine should always and necessarily be considered "publicized." We deem it significant that a person entering the name "Heidi Black" into a search engine would not have immediately or directly discovered that Black's FDS was available online. Instead, that person would have had to click on the search result "Heidi Black, 941JJO," thereby opening a blank attachment page containing a hyperlink. The person then would have had to click on the hyperlink—which, notably, contained the term "FDS" in a string of words and numbers, but did not otherwise suggest that it provided access to Black's financial information. In contrast to an internet posting made on, and easily accessible through, a public website, the "publication" that occurred here did not "reach" the public directly,

and should not give rise to liability in the same manner. In short, the public policies underlying this tort are not served by treating the mere availability of private facts on the internet—regardless of the multiple steps required to access the information and the inscrutable description of what is actually being accessed—as a communication "reaching" or "sure to reach" the public at large. *See* RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a.

¶38 Finally, we acknowledge that a communication to the public at large does not necessarily depend on the number of people to whom the information was communicated. *See* **Zinda**, 149 Wis. 2d at 929 ("[A] publication in a newspaper, even of a small circulation, may be sufficient to give publicity within the meaning of the term."). Under the circumstances of this case, however, it is significant that only one person besides Black viewed the FDS online. Under these facts, there is no viable argument that WIS. STAT. § 995.50(2)(am)3. treats a disclosure to a single person as a communication to the public at large solely because the private facts were disclosed via the internet. Accordingly, we reject Black's publicity per se argument.[7]

## CONCLUSION

¶39 For the reasons stated, we affirm the circuit court order granting Defendants' motion for summary judgment and dismissing Black's claim with prejudice.

---

[7] We do not need to reach, and therefore do not address, Defendants' additional argument that summary judgment was appropriate because Kelly did not intentionally disclose Black's FDS. *See* **Barrows v. American Fam. Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.