COURT OF APPEALS
DECISION
DATED AND FILED

October 26, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP873**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV374

IN COURT OF APPEALS
DISTRICT IV

NICOLE OKEY,

  PLAINTIFF-APPELLANT,

 V.

RUNDE CHEVROLET, INC. AND SENTRY INSURANCE COMPANY,

  DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Grant County: ROBERT P. VAN DE HEY, Judge. *Affirmed.*

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nicole Okey appeals a circuit court judgment granting summary judgment in favor of Runde Chevrolet, Inc. and Sentry

Insurance Company (collectively, "Runde") and dismissing Okey's invasion of privacy claim. Based on the undisputed facts, we conclude that Okey cannot establish the publicity element of her claim under WIS. STAT. § 995.50(2)(am)3. (2021-22).[1] Accordingly, we affirm.

## BACKGROUND

¶2 The following facts are not disputed for purposes of this appeal. Okey, who is hearing impaired, purchased a vehicle from Runde in June 2018. Mike Horn sold the vehicle to Okey.

¶3 Three months later, Horn sold a vehicle to Daniel Hoppenjan, who is also hearing impaired. The same day that Horn sold the vehicle to Hoppenjan, Hoppenjan began texting Okey and sending her messages via Facebook Messenger. Hoppenjan sent the first communication at approximately 3:00 p.m. Okey did not notice Hoppenjan's communications until approximately 9:30 p.m. Hoppenjan sent the last communication to Okey at approximately 2:30 a.m. the next day. Okey had not met Hoppenjan and did not know who he was.

¶4 In his initial communications, Hoppenjan identified himself as "Daniel" and referred to Okey by her first name. He also sent multiple pictures of himself and informed Okey that he lives in Illinois, that his mother and sister live in the same city as Okey, and that he would like to see her. Upon seeing the communications from Hoppenjan, Okey responded, "I don[']t know you" and asked Hoppenjan how he obtained her number. She also stated to Hoppenjan that

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

she was "very uneasy" and "bothered" by his communications and that she "d[id]n't feel safe." Hoppenjan requested a picture of Okey. He also eventually informed Okey that Horn had given him her number, and he sent her a photo of Horn's business card. Hoppenjan stated to Okey that Horn wanted Hoppenjan to "see [a] new woman" because Horn thought Hoppenjan was "bored [by] myself," and that Horn is a "g[oo]d man" who helped Hoppenjan buy a new car.

¶5 During these communications, Okey periodically blocked Hoppenjan's communications and told him several times to stop contacting her, but Hoppenjan continued to contact her. At some point during the exchanges, Okey's sister called Hoppenjan and, according to the sister, Hoppenjan said that he knew where Okey worked. The last communication that Okey received from Hoppenjan was at 2:24 a.m. and is a photo of a scantily clad woman with a heart drawn on the woman's breast.

¶6 While Hoppenjan was sending these communications to her, Okey called the police. Police determined that a vehicle that had been parked in front of Okey's apartment building was registered to Randall Hoppenjan, who lived in the same city as Okey but not in the same apartment building. When police interviewed (Daniel) Hoppenjan, Hoppenjan said that Horn had shared Okey's information and he agreed to stop contacting Okey.

¶7 Police also interviewed Horn, who told police that he had showed to Hoppenjan Okey's Facebook picture but that Horn had not shared any information with Hoppenjan other than that Okey had recently bought a vehicle and that she is hearing impaired. Horn told police that he had not met Hoppenjan before selling him a vehicle, whereas Hoppenjan told police that he had known Horn for a long time.

3

¶8    Hoppenjan was convicted of harassment in connection with these events.  Horn has since passed away.  Neither is a party to this action.

¶9    Okey filed suit against Runde, alleging that Runde violated her right to privacy under WIS. STAT. § 995.50.[2]  Runde moved for summary judgment and argued that Horn's disclosures were outside the scope of his employment.  After supplemental briefing, the circuit court ultimately granted summary judgment to Runde, but for different reasons.  The court determined (among other things) that Okey, as a matter of law, cannot satisfy the publicity element of her claim under § 995.50(2)(am)3.

¶10    Okey appeals.

## DISCUSSION

*I. Standard of Review*

¶11    We review a grant of summary judgment de novo.  ***Estate of Oaks v. Stouff***, 2020 WI App 29, ¶11, 392 Wis. 2d 352, 944 N.W.2d 611.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  This appeal also requires that we interpret WIS. STAT. § 995.50, which likewise involves a

---

[2] Okey's complaint does not specify which of the four subdivision paragraphs in WIS. STAT. § 995.50(2)(am) her claim is based on.  After examining the subdivision paragraphs, however, the circuit court determined that only § 995.50(2)(am)3. is applicable.  On appeal, Okey confirms that she makes her claim pursuant to § 995.50(2)(am)3.

question of law that we determine de novo. ***Teschendorf v. State Farm Ins. Cos.***, 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258.

*II. Invasion of Privacy Claim under WIS. STAT. § 995.50(2)(am)3.*

¶12    Okey argues that Horn's disclosures to Hoppenjan of Okey's phone number and the fact of her hearing impairment violated WIS. STAT. § 995.50(2)(am)3.    Section 995.50 protects against unreasonable invasions of privacy.  Sec. 995.50(1).  It entitles one whose privacy is "unreasonably invaded" to various forms of relief, including compensatory damages and reasonable attorney fees.  ***Id.***  Relevant here, § 995.50(2)(am)3. defines an "invasion of privacy" as including:

> Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed.  It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

¶13    This court has explained that, for a claim of public disclosure of private facts under WIS. STAT. § 995.50(2)(am)3., a plaintiff must prove four elements:  "(1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed."  ***Pachowitz v. LeDoux***, 2003 WI App 120, ¶18, 265 Wis. 2d 631, 666

N.W.2d 88. All four elements must be proven. **Olson v. Red Cedar Clinic**, 2004 WI App 102, ¶12, 273 Wis. 2d 728, 681 N.W.2d 306.[3]

¶14 We resolve this appeal based on the first element, whether there was "a public disclosure of facts regarding the plaintiff," also referred to as the "publicity" element. *See* **Pachowitz**, 265 Wis. 2d 631, ¶18. "Publicity" requires that "'the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" **Id.** (quoting **Hillman v. Columbia Cnty.**, 164 Wis. 2d 376, 394, 474 N.W.2d 913 (Ct. App. 1991)).

¶15 Here, it is undisputed that Horn gave the information at issue to just one person, Hoppenjan. However, this court has recognized that disclosure to a single individual or to a small group may constitute publicity under certain circumstances. *See* **Pachowitz**, 265 Wis. 2d 631, ¶¶22-27.

¶16 For example, in **Pachowitz**, we upheld a jury's verdict for the plaintiff, Pachowitz, when the disclosure was made to a single person, one of Pachowitz's coworkers. **Id.**, ¶¶25-27. In that case, Pachowitz brought an action for invasion of privacy against LeDoux, an emergency medical technician (EMT) who assisted in transporting Pachowitz to a hospital emergency room for a possible overdose. **Id.**, ¶¶4-5, 8. LeDoux shared information about Pachowitz's

---

[3] We note that both **Pachowitz v. LeDoux**, 2003 WI App 120, ¶18, 265 Wis. 2d 631, 666 N.W.2d 88, and **Olson v. Red Cedar Clinic**, 2004 WI App 102, ¶12, 273 Wis. 2d 728, 681 N.W.2d 306, reference the earlier version of the invasion of privacy statute, WIS. STAT. § 895.50 (2003-04). This statute remains substantively the same but was renumbered to WIS. STAT. § 995.50 in 2005 Wis. Act 155, § 51. Further, the subdivisions within § 995.50(2) were renumbered in 2019 Wis. Act 72, § 1. Neither side in this appeal suggests that there has been any change in statutory wording that could be pertinent to the issue we deem dispositive.

possible overdose with one of Pachowitz's coworkers at a local hospital, who then told other hospital staff. *Id.*, ¶¶4-7. Two weeks prior to the emergency EMT response, LeDoux had been socializing with the coworker and others and heard the coworker and another person speaking "about Pachowitz and her medical condition." *Id.*, ¶6. During this conversation, LeDoux also learned that the coworker worked with Pachowitz at a local hospital. *Id.*

¶17 On appeal, we concluded that "disclosure of private information to one person or to a small group does not, as a matter of law in all cases, fail to satisfy the publicity element of an invasion of privacy claim." *Id.*, ¶24. We explained that whether the publicity element is satisfied "depends upon the particular facts of the case and the nature of plaintiff's relationship to the audience who received the information." *Id*. We identified two rationales for concluding that disclosure to only one person or a few people may constitute a public disclosure: the first based on the "character and nature" of the person to whom the information is disclosed, and the second based on whether there is a "special relationship" between the plaintiff and the person to whom the information is disclosed. *Id.*, ¶¶21-25; *see also Olson*, 273 Wis. 2d 728, ¶11 (summarizing *Pachowitz* rationale).

¶18 In examining the "character and nature" of the person to whom the information was disclosed, we noted that LeDoux knew that this person was Pachowitz's coworker. *Pachowitz*, 265 Wis. 2d 631, ¶25. We also observed that LeDoux had recently heard the coworker "discuss Pachowitz's private affairs at length" and was therefore "on notice as to [the coworker's] 'loose lips.'" *Id.* Thus, we concluded that the evidence presented at trial "supports an inference that LeDoux should have appreciated the risk that [the coworker] would further disclose Pachowitz's private information." *Id.*, ¶27.

¶19    Under the "special relationship" rationale, we noted that a disclosure to one or a few people may constitute "publicity" if the "plaintiff has a special relationship with the individuals to whom the matter was disclosed." *Id.*, ¶22. We observed, "[T]he rationale behind this rule is that the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people." *Id.*    Thus, "[w]hen a special relationship exists, [']the public['] can include one person or small groups such as fellow employees, club members, church members, family or neighbors." *Id.*, ¶23. As applied to Pachowitz's situation, we noted that Pachowitz's husband had asked the EMTs not to transport Pachowitz to the hospital where she and the coworker worked. *Id.*, ¶25.    This evidence "support[ed] an inference that Pachowitz wanted to avoid disclosure of her need for emergency medical care to her fellow employees." *Id.* We further concluded that the evidence allowed "for the inference that Pachowitz had a special relationship with her co-employees … and that disclosure of personal and private information about the EMT call would embarrass Pachowitz." *Id.*, ¶27.

¶20    Thus, for these two separate but related reasons, we concluded that the evidence supported the jury's determination that LeDoux had publicized private medical information concerning Pachowitz, even though LeDoux had disclosed the information to only one person. *Id.*

¶21    Okey argues that, as in *Pachowitz*, the publicity element is satisfied here.    In discussing Hoppenjan's "character and nature," Okey lists several undisputed facts that she says "allow an inference that Hoppenjan would, or had, further spread the information around":  namely, Hoppenjan told Okey that he had family living near her, he indicated that he knew where Okey worked, a car was parked outside Okey's residence that was registered to Randall Hoppenjan, and

Hoppenjan sent Okey messages over Facebook. Okey argues that "[i]t could be inferred that Hoppenjan had already told 'Randall Hoppenjan' Ms. Okey's information, leading to the vehicle being parked outside her house" and that "Hoppenjan's reference to her workplace as well as his use of Facebook allow an inference that he might try to contact her at work or contact others on Facebook about her, during which contacts he might disclose the information."

¶22 The fundamental problem with Okey's argument on this point is that, even assuming that such facts support the inference that Hoppenjan would further disclose Okey's phone number or the fact of her hearing impairment to others, Okey fails to point to any facts showing that Horn had any notice at the time he made the disclosures to Hoppenjan that Hoppenjan would make any such further disclosures. Indeed, Okey does not even make this argument on appeal. We construe *Pachowitz*'s "character and nature" rationale as requiring evidence that could support a finding that Horn had such notice. *See id.*, ¶¶25, 27 (relying on information showing that "LeDoux was on notice as to [coworker's] 'loose lips,'" and "should have appreciated the risk that [coworker] would further disclose Pachowitz's private information"); *see also* **Olson**, 273 Wis. 2d 728, ¶11 (noting that in *Pachowitz*, LeDoux "knew that the person she gave the information to had 'loose lips'" and that LeDoux should have appreciated the risk of further disclosure by that person). Accordingly, we reject Okey's arguments based on *Pachowitz*'s "character and nature" rationale.

¶23 As to *Pachowitz*'s "special relationship" rationale, there is no evidence in the record of a "special relationship" between the "plaintiff"—Okey— and the "individual[] to whom the [information] was disclosed"—Hoppenjan. *See Pachowitz*, 265 Wis. 2d 631, ¶22. Okey addresses the interactions between her and Hoppenjan that occurred after Horn made the disclosures to Hoppenjan, and

emphasizes the results of those disclosures. The proper inquiry, however, asks whether a special relationship existed as of the time of the disclosures. *See id.*, ¶23 (listing examples of individuals with whom a special relationship might exist: "fellow employees, club members, church members, family or neighbors"). Here, as in *Olson*, "there is no evidence that [Okey] and [Hoppenjan] had any relationship whatsoever, let alone a special relationship" at the time of the disclosures. *See Olson*, 273 Wis. 2d 728, ¶11.

¶24 Thus, based on the undisputed facts, Okey cannot establish the publicity element of her claim under WIS. STAT. § 995.50(2)(am)3. Because this issue is dispositive, we do not address the parties' remaining arguments. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (appellate court need not address every issue when one is dispositive).

¶25 Accordingly, we affirm the circuit court's judgment granting Runde's motion for summary judgment and dismissing Okey's invasion of privacy claim.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

10